**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0003n.06

**Case No. 16-5471**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHRISTOPHER ALEXANDER, | ) | |
| | ) | **FILED** |
| *Plaintiff-Appellant*, | ) | Jan 04, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| KELLOGG USA, INC., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE: COLE, Chief Judge; BOGGS and SILER, Circuit Judges.

COLE, Chief Judge. Defendant Kellogg USA, Inc. ("Kellogg") operates a plant in Rossville, Tennessee. Plaintiff Christopher Alexander worked as a production operator at the plant until January 2014, when Kellogg terminated him for excessive unexcused absences. Alexander then sued Kellogg for interference and retaliation under the Family Medical Leave Act (FMLA). Alexander also sued Kellogg for retaliation under the Tennessee Workers' Compensation Act. The district court granted summary judgment to Kellogg on all of Alexander's claims. Alexander has appealed this decision. Because Alexander has failed to provide evidence sufficient to establish a prima facie case of FMLA interference, FMLA retaliation, or workers' compensation retaliation, we affirm the district court's grant of summary judgment.

# I. BACKGROUND

## A. Kellogg's Attendance Policy

Kellogg's attendance policy requires employees intending to be absent to notify Kellogg at least two hours before their start time, using a call service. Kellogg issues points to employees based on the number and type of attendance violations. It then disciplines them for exceeding certain point amounts. This includes issuing a final reprimand after six points, placing the employee on probation after eight points, and terminating him after nine points. The policy authorizes Kellogg to discipline an employee in absentia.

## B. Cigna's Attendance Policy

Kellogg excuses absences approved under the FMLA or as worker's compensation benefits, each of which require documentation. Cigna Health Insurance ("Cigna") administers Kellogg's FMLA program. Employees requesting leave under the FMLA must provide the relevant documentation to Cigna. Cigna then notifies the employee whether it has approved the leave or if approval requires additional documentation. Employees routinely contact Kellogg's Human Resources Department for help navigating Cigna's FMLA process.

Employees may request intermittent FMLA leave, which allows them to be absent for separate blocks of time rather than continuously. If Cigna approves intermittent FMLA leave for a particular employee, he must report any absence under it within forty-eight hours of missing work by phone or online. Otherwise, the absence is unexcused.

While Alexander was working at Kellogg, Cigna approved either continuous or intermittent FMLA leave for him about ninety times. Alexander reported his absences under the leave using both of the approved methods.

### C. Workers' Compensation Benefits

In 2010, Alexander injured one of his toes from a chemical spill at work. Kellogg placed him on short-term disability leave for six to eight months, during which he received workers' compensation benefits.

In 2012, Alexander injured his neck after slipping on a wet floor at work. Kellogg again placed him on short-term disability leave for about eight months, during which time he again received workers' compensation benefits.

### D. Events Leading to Termination

On November 6, 2013, Alexander received a letter stating that Cigna had approved intermittent FMLA leave for him from October 24, 2013 to April 24, 2014. Alexander was absent on November 20, 2013. Though he notified Kellogg at least two hours beforehand using the designated call service, he failed to report the absence to Cigna within forty-eight hours by phone or online. Thus, on December 6, 2013, Cigna informed Alexander that it declined to approve the absence under his intermittent leave. Alexander told a Kellogg human-resources manager, who simply reminded him of the forty-eight-hour reporting requirement. Given his prior attendance violations, this unexcused absence placed Alexander at 7.5 attendance points, which was enough for a final reprimand. Kellogg, however, did not issue one to him.

Alexander was again absent from December 9, 2013 to December 11, 2013. And he again notified Kellogg at least two hours beforehand using the call service, but failed to report the absences to Cigna within forty-eight hours by phone or online. Alexander claims only to have left an unanswered voicemail for Cigna on December 13. Thus, on December 16, 2013, Alexander received a letter stating that Cigna had denied approval of the absences under his intermittent leave.

That day, however, Cigna approved separate intermittent leave for Alexander. He was absent under that leave from December 17, 2013 to January 9, 2014. During that time, Kellogg encouraged Alexander to request continuous FMLA leave and short-term disability to ensure he was adequately covered and continued to receive payment.

On January 10, 2014, Kellogg 1) issued Alexander a final reprimand for accumulating 8.5 points after his December 9 absence, 2) placed him on probation for accumulating 9.5 points after his December 10 absence, and 3) issued him a notice of suspension pending a discharge hearing for accumulating 10.5 points after his December 11 absence.

On January 28, 2014, Kellogg terminated Alexander because of excessive unexcused absences.

Alexander subsequently sued Kellogg for interference and retaliation under the FMLA and retaliation under the Tennessee Workers' Compensation Act. 29 U.S.C. § 2615(a); Tenn. Code Ann. § 50-6-101. The United States District Court for the Western District of Tennessee granted summary judgment to Kellogg on each claim. Alexander has now appealed the decision.

## II. ANALYSIS

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Med. Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). Summary judgment is appropriate when the record shows "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In other words, we affirm summary judgment when there is no evidence that would allow a reasonable jury to find for the nonmoving party, entitling the moving party to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(a). Though we view all facts and inferences in the light most favorable to the nonmoving

party, *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 587 (1986), a mere "scintilla of evidence" is insufficient to prevent summary judgment. *Anderson*, 477 U.S. at 252.

## B. Williams Affidavit

Alexander principally relies on the affidavit of Lashonia Williams.

As the "Chief Shop Steward" of the plant, Williams "assist[s] employees when they have been disciplined" and thus attended Alexander's suspension hearing. Williams testified that 1) the human-resources manager admitted that she refused to help Alexander with his FMLA issues on December 12 and 13, 2) Williams knew employees who had more points than Alexander when Kellogg terminated him, 3) a plant manager stated at certain meetings that too many employees were taking FMLA, 4) "[a]t Kellogg's, the rule is that you can miss 7 days and only get one point with a doctor's excuse," and that 5) Alexander was the only employee she knew who Kellogg had rushed through the disciplinary process.

Federal Rule of Civil Procedure 56(c)(4) requires supporting affidavits to be based on personal knowledge, meaning personal observations or experiences. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991); *Gaskey v. Fulton Bellows, LLC*, No. 3:05-CV-540, 2007 WL 869621, at *3 (E.D. Tenn. Mar. 20, 2007) (striking conclusory paragraphs). "It is the burden of the party submitting the affidavit to show circumstances indicating the [affiant] has based the statement on personal knowledge." *Gaskey*, 2007 WL 869621, at *3 (internal quotation marks omitted). Further, any facts that an affidavit offers must be admissible in evidence. Fed. R. Civ. P. 56(c)(4).

Williams does not expressly provide the basis for each assertion in her affidavit. For example, we do not know how she learned of employees' attendance points beyond a vague reference to her "position." (Williams Aff., R. 26-3, PageID 218-19.) That is not to deny that

courts may infer personal knowledge from the content and context of an affidavit. *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 956 (S.D. Ohio 2000). We have presumed that corporate officers have personal knowledge of their corporation's acts, for example. *Id.* But corporate officers, unlike chief shop stewards, are a known quantity. And Williams fails to provide information about the scope or responsibilities of her job that would allow us to presume knowledge on her part. *See e.g.*, *id.* at 957 (striking portions of an affidavit because affiant "provided no foundation to support that he had personal knowledge regarding the recruitment of physicians and nurses . . . although an employee of that group").

Further, statements based on mere "information and belief," such as the number of points Kellogg issues for a seven-day absence supported by a doctor's note, or conjecture about other employees' disciplinary processes, are not based on personal knowledge. *Id.* at 956.

Independent of Williams's affidavit, however, Kellogg's attendance policy states that employees accrue only one point for a seven-day absence so long as they provide medical documentation for each day. But the guideline is irrelevant to Alexander since Kellogg has separate rules for the FMLA leave Alexander claims he was taking and is at the heart of this case.

Finally, the human-resources manager's admission and plant manager's statements at certain meetings are inadmissible hearsay without a serious attempt by Alexander to show that they fall under a recognized hearsay exception. *See* Fed. R. Evidence 801(c); Alexander Br. 16 (characterizing the statements as "admission[s] by party opponent" without further explanation).

Accordingly, Williams's affidavit does not constitute evidence upon which a reasonable jury could find for Kellogg.

### C. FMLA Interference

The FMLA entitles an employee to twelve weeks of unpaid leave to recover from serious medical problems or to care for family members suffering from such problems. *See* 29 U.S.C. § 2612. The statute also prohibits an employer from interfering with an employee's right to FMLA leave. 29 U.S.C. § 2615(a)(1).

The *McDonnell Douglas* framework governs FMLA claims. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, once an employee establishes a prima facie FMLA claim, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). If the employer is able to provide such a reason, the burden again shifts to the employee to show that the reason is a pretext for unlawful discrimination. *Id.* at 761–62.

To establish a prima facie case for FMLA interference, an employee must show 1) the FMLA applies to him and his employer, 2) the employee was entitled to FMLA leave, 3) the employee notified his employer that he intended to take the leave, and that 4) the employer wrongfully denied the employee the FMLA leave. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). Here the parties dispute only the third requirement.

The record does not permit even a prima facie case for FMLA interference. Alexander neglected to notify Cigna, and thus Kellogg, of his intent to be absent on November 20 and from December 9 to 11 under his approved FMLA leave. He admits not reporting any of the absences to Cigna within forty-eight hours of missing work by phone or online—Kellogg's internal requirement.

Alexander's consultation with a human-resources manager (who reminded him of the forty-eight-hour requirement) on December 6 about the November 20 absence, and his

unanswered voicemail for Cigna on December 13 regarding the December 11 absence, are unavailing. As the district court recognized, an FMLA regulation authorizes employers to deny FMLA leave for failure to comply with internal notice requirements "absent unusual circumstances." 29 C.F.R. § 825.302(d) ("An employee also may be required by an employer's policy to contact a specific individual."); *see Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013) (affirming § 825.302(d) is good law). Alexander has neither offered evidence of unusual circumstances in his case nor has he alleged ignorance of Cigna's/Kellogg's internal notice requirement.

Alexander's inability to establish a prima facie case for FMLA interference makes it unnecessary to conduct the rest of the *McDonnell Douglas* inquiry and entitles Kellogg to summary judgment on the claim.

### D. FMLA Retaliation

The FMLA prohibits an employer from retaliating against an employee for exercising his right to FMLA leave. 29 U.S.C. § 2615(a)(2).

To establish a prima facie case for FMLA retaliation, an employee must show 1) he was carrying out an activity protected by the FMLA, 2) his employer knew he was exercising his rights under the FMLA, 3) the employer took adverse action against the employee, and 4) a causal link between the protected activity and adverse action. *Donald*, 667 F.3d at 761.

There is no evidence that Alexander exercised a right under the FMLA for the purposes of his retaliation claim. The catalysts for Kellogg's supposed retaliation—terminating Alexander—were his unexcused, ultimately excessive absences beginning on November 20. As the district court pointed out, however, Cigna permissibly declined to approve these days under Alexander's FMLA leave. Since the statute cannot protect non-FMLA leave, Alexander cannot

satisfy the first element of a prima facie FMLA case. As with his FMLA interference claim, Alexander's inability to establish a prima facie case for FMLA retaliation makes the rest of the *McDonnell Douglas* analysis unnecessary. Thus, Kellogg is entitled to summary judgment on Alexander's FMLA retaliation claim.

### E. Workers' Compensation Retaliation

Tennessee law also forbids employers from retaliating against employees for filing workers' compensation claims. *See Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 444–45 (Tenn. 1984) ("[a] cause of action for retaliatory discharge, although not explicitly created by the [state workers' compensation] statute, is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature."). We use the same burden-shifting framework here as with FMLA interference and retaliation claims. *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999).

To establish a prima facie case for workers' compensation retaliation, the employee must show 1) he was an employee of the employer at the time of the injury, 2) the employee filed a workers' compensation claim against the employer, 3) the employer terminated the employee, and 4) the workers' compensation claim played a substantial role in the employer's decision to terminate the employee. *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 805 (Tenn. 2015). Here the parties dispute only the last element.

Alexander could create a triable issue as to whether his workers' compensation claims substantially affected Kellogg's decision to terminate him using either direct or compelling circumstantial evidence. *Frizzell v. Mohawk Indus.*, No. M2004-01598-COA-R3-CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006). Compelling circumstantial evidence may include negativity by the employer towards the employee's injury, the employer's departure

from its own policies, and the employer's differential treatment of similarly situated employees. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006). An employee may not rely "on the mere short passage of time between the filing of a workers' compensation claim and subsequent termination to prove a prima facie case of retaliation." *Id.*

Alexander offered neither direct nor circumstantial proof that his 2010 and 2012 workers' compensation claims substantially affected Kellogg's decision to terminate him in 2014. In fact, he neglected to show that anyone involved in the decision even knew of the claims, as his 2012 supervisor was no longer with Kellogg in 2014.

Without sufficient evidence that his workers' compensation claims played a substantial role in Kellogg's decision to terminate him, Alexander cannot establish a prima facie case for workers' compensation retaliation. This makes further analysis under *McDonnell Douglas* unnecessary and entitles Kellogg to summary judgment on the claim.

## III.  CONCLUSION

Because Alexander has failed to provide evidence sufficient to establish a prima facie case of FMLA interference, FMLA retaliation, or retaliation under the Tennessee Workers' Compensation Act, we affirm the district court's grant of summary judgment.