**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0135n.06

Case No. 18-3831

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| NICK NJAIM, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Mar 19, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| FCA US LLC, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. FCA fired Nick Njaim after he repeatedly violated FCA's attendance policy. So Njaim sued FCA, claiming that FCA actually fired him because he exercised his Family and Medical Leave Act rights. The district court granted summary judgment for FCA. We affirm.

I.

FCA's attendance policy requires employees to call in and report an absence or tardy at least thirty minutes before their shift is scheduled to begin. Failure to call in on time results in an employee receiving a half "occurrence" for a tardy and a full "occurrence" for an absence. An "occurrence" essentially works like a demerit or strike. But unlike in baseball, FCA allows seven strikes before it fires an employee.

When Nick Njaim started working at FCA, he complied with this policy. Yet things changed when Njaim began struggling with mental health and substance abuse problems. Njaim was often tardy or absent because of these problems. He eventually sought treatment, taking paid time off through FCA's employer-sponsored leave program. And when Njaim returned to work, he went on intermittent Family and Medical Leave Act (FMLA) leave. But his problems with FCA's attendance policy did not stop: Njaim violated the policy by missing work or calling in late at least eighteen times, and he ultimately reached seven occurrences. Accordingly, FCA followed its policy and fired him.

Njaim sued FCA under the FMLA. The FMLA guarantees twelve weeks of unpaid leave to an eligible employee if, among other things, the employee cannot perform his job because he has "a serious health condition." 29 U.S.C. § 2612(a)(1), (c); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 420 (6th Cir. 2004). Njaim argued that FCA violated this guarantee by (1) interfering with his right to take FMLA leave and (2) retaliating against him for taking such leave. The district court granted FCA summary judgment, and we review de novo. *Brenneman*, 366 F.3d at 417.

## II.

Njaim argues that FCA interfered with his FMLA rights because it did not tell him that he could use FMLA leave in 2014. Njaim claims that if he had known he could use FMLA leave and then did so, FCA could not have given him occurrences for three of his absences in July. Nor could FCA have given him a half occurrence for being tardy when he returned from leave in August. Without those July and August occurrences, Njaim would not have reached the seventh occurrence that resulted in his dismissal. We review each challenge in turn.

*July absences.* Njaim argues that if FCA had told him about his FMLA rights, it could not have given him three occurrences in July. FCA does have a duty to inform its employees about their right to take FMLA leave, but Njaim must show he triggered that duty by giving FCA notice that he was requesting leave. *See* 29 C.F.R. §§ 825.300(b)(1), 825.302(c); *Brenneman*, 366 F.3d at 421. Njaim's notice did not have to expressly say "FMLA," but it did need to convey enough information to let FCA know that he was requesting "leave for a serious health condition that rendered him unable to perform his job." *Brenneman*, 366 F.3d at 421. The timing of this notice is also critical. Njaim must prove that he gave this notice *before* his absences because FCA is not required to designate absences as FMLA-covered leave after the fact. *See* 29 C.F.R. § 825.301(d) (explaining that retroactive designation is permissive).

But Njaim has not presented any evidence that he notified FCA of his request for FMLA-qualifying leave before his July absences. As of July 24, 2014—the date of the third challenged absence—all that FCA knew was that Njaim had been absent three days that week and called in late each day. Njaim does not claim that he gave FCA notice during these calls, and his three absences alone were insufficient to put them on notice. *See Brenneman*, 366 F.3d at 421, 423–24 (holding that notice was insufficient where the employee called in to report an absence and only said he "wasn't doing well and . . . wouldn't be in [that day]").

In response, Njaim alleges that FCA had notice before his three July absences because he requested leave for inpatient mental health and substance abuse treatment. But this notice came too late. *See Coble v. City of White House*, 634 F.3d 865, 868–69 (6th Cir. 2011) (explaining that the plaintiff's version of the facts does not need to be accepted as true for summary judgment when the record clearly contradicts it). The earliest that FCA could have learned of Njaim's request for leave was when Njaim began treatment, July 30, 2014—a week *after* his last July absence. The

next day, FCA's leave administrator wrote a letter to Njaim, confirming that it began processing his request for employer-sponsored leave. While Njaim attempts to point to a doctor's note in the record to show FCA knew earlier than that date, this too was late. The doctor's note says Njaim was "temporarily disabled and unable to work" from July 21 through August 19. But that note could not have been written until July 30 at the earliest—when Njaim began his treatment at the substance abuse and mental health facility. And neither FCA nor its leave administrator even learned of this note until August. Thus, Njaim cannot prove that he gave FCA notice of his intent to take FMLA leave before any of the July absences.

*August tardy.* Next, Njaim challenges the half occurrence FCA gave him when he was tardy on August 23, the day he returned from employer-sponsored leave. He argues that if he had been on FMLA leave rather than employer-sponsored leave, FCA could not have marked him as tardy when he returned to work late on August 23 because employers cannot force employees to work while on FMLA leave. But whatever kind of leave Njaim had taken, it was over on August 23. By that day, Njaim's doctor had cleared him to come back to work, and Njaim decided to do so. And once he came back from leave (either FMLA or employer-sponsored), Njaim had to follow FCA's reinstatement procedures to return to work. *See* 29 U.S.C. § 2614(a)(4); *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 246–47 (6th Cir. 2004). FCA requires employees coming back from medical leave to go through a medical-clearance process, which the employees must finish "in time to start [their] shift." R. 23-3, Pg. ID 153. But Njaim did not do so—he was late again. Although Njaim's shift began at 5:00 P.M., he did not start the medical-clearance process until 5:18 P.M. So even if Njaim had been on FMLA leave, he would have been "tardy" under FCA's policy. Accordingly, Njaim cannot prove that FCA interfered with his FMLA rights on August 23.

Thus, Njaim's FMLA-interference claim fails because (1) for his July absences, he is unable to prove that he gave FCA prior notice of his intention to take leave, and (2) for his August tardy, FCA did not deny Njaim FMLA "benefits to which he was entitled" because Njaim did not comply with FCA's procedures for returning from leave. *See Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

III.

Njaim also argues that the district court should not have granted FCA summary judgment on his FMLA-retaliation claim. His retaliation claim stems from the absence that earned him his seventh occurrence. While Njaim was on intermittent FMLA leave, he reached his seventh occurrence when he called in late to report his absence on May 22, 2015. He argues that FCA fired him, seven days later, in retaliation for exercising his right to take FMLA leave on May 22. To prove FMLA retaliation, Njaim must show that his FMLA leave on May 22 was a "protected activity" that was causally connected to FCA firing him. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 897 (6th Cir. 2016); *see also Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).

Njaim cannot show "protected activity" because here, too, Njaim was late. FCA required Njaim to comply with its call-in policy to take his intermittent FMLA leave during 2015, something the law permitted FCA to do. 29 C.F.R. § 825.302(d); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614–15 (6th Cir. 2013). Under FCA's call-in policy, FCA requires its employees to call in to report an absence thirty minutes before the start of their shift. Instead of calling in on time, thirty minutes before his shift, Njaim called in late, only nine minutes before his shift. Accordingly, Njaim did not take FMLA leave on May 22, and FCA could not retaliate against him for taking FMLA leave on that date. In a case with very similar facts, we explained

that an employee cannot "satisfy the first element of a prima facie FMLA case" when he does not follow the employer's leave policies. *Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 501 (6th Cir. 2017). The same result applies here.

Njaim responds by arguing that the policy is different in practice than it is on the books. He claims that FCA sometimes did not impose occurrences after employees failed to call in their absences. But the attendance policy recognizes that not all absences will result in occurrences. FCA imposes an occurrence only if the absence is caught on time. Njaim is then in the odd position of criticizing FCA for holding itself up to the standard of being on time to defend his repeated lateness. In any event, merely pointing out that some absences have gone unpunished is insufficient to re-define what the policy is or change the fact that Njaim violated it. Thus, Njaim's absence was not a "protected activity" under the FMLA because Njaim did not comply with FCA's policy.

We affirm.