RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0076p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

QUOC VIET,

        *Plaintiff-Appellant*,

    *v.*

VICTOR LE; COPIER VICTOR, INC.,

        *Defendants-Appellees*.

No. 18-6191

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:17-cv-00114—Harry S. Mattice, Jr., District Judge.

Decided and Filed:  March 10, 2020

Before:  KETHLEDGE, BUSH, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Katherine A. Young, YOUNG LAW OFFICE, P.C., Knoxville, Tennessee, for
Appellant.  Dale J. Montpelier, MONTPELIER, DELLA-RODOLFA & LOPE, P.C., Knoxville,
Tennessee, for Appellees.

─────────────────

## OPINION

─────────────────

     MURPHY, Circuit Judge.  The Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1),
requires employers to pay overtime to employees who work more than 40 hours per week.  In
this case, we consider the kind of evidence employees must present to create a jury question over
whether they worked overtime.  Quoc Viet bought used copiers for Victor Le and Le's
corporation, Copier Victor, and shipped these copiers to Vietnam for resale.  After the parties'
relationship soured, Viet sued Le and Copier Victor alleging that they wrongly failed to pay him

overtime. Viet testified that he typically worked 60 hours per week but offered few details to support his estimate. The district court found Viet's testimony about his average workweek too vague and conclusory to withstand summary judgment. We agree and affirm.

I

Born in Vietnam, Quoc Viet immigrated to this country with his parents as a teenager. After years of service in the U.S. Navy, Viet settled near Knoxville, Tennessee, and began working as a handyman. In 2012, Viet met Victor Le while doing repair work at Le's home. Like Viet, Le had also previously lived in Vietnam. While there, he had operated a company that imported and resold goods, including copiers. A couple years after Le immigrated to the United States, he incorporated another company, Copier Victor, to export copiers to Vietnam for resale in that country.

Shortly after meeting Viet, Le asked him to invest in, and do work for, Copier Victor. Viet invested $10,000 in the company in exchange for payments of $750 every 30 or 40 days. He also received training from Le on how to purchase used copiers online. After training Viet, Le returned to Vietnam.

From mid-2013 until September 2016, Le ran the business primarily from Vietnam and Viet ran the business primarily from the United States. Viet purchased used copiers in the United States and shipped them to Vietnam. Le then resold the copiers in that country.

Viet conducted his stateside work from his home and a nearby warehouse. He communicated with Le through Facebook accounts, as well as by phone and messaging applications. Le typically gave Viet instructions on the types of copiers to buy and the general price range to seek. Viet would then search for copiers on websites like Craigslist and negotiate the price with sellers. Viet typically arranged for the copiers to be shipped to the Tennessee warehouse. Occasionally, he would have to pick up and transport a copier to the warehouse himself. When Viet had enough copiers at this warehouse, he oversaw their bulk shipment to Vietnam. He sent spreadsheets to Le that itemized the copiers he had purchased and the amounts Le owed him.

Copier Victor and Le treated Viet as an independent contractor. Viet always received the 1099 tax form used for independent contractors, not the W-2 form used for employees. Le also did not set any work schedule for Viet, did not keep track of Viet's hours, and did not pay Viet an annual salary or wage. Instead, Le paid Viet a fixed rate for each copier that Viet purchased. The more copiers that Viet bought, the more money he made. The commission Le paid Viet for a copier depended on its purchase price. If Viet bought a copier for $500 or less, Le would pay him $100. If Viet bought a copier for between $500 and $1,000, Le would pay him $150. And if Viet bought a copier for between $1,000 and $1,500, Le would pay him $200. The commissions continued to increase by $50 for every $500 increase in a copier's purchase price.

By mid-2016, tensions arose in this business relationship. According to Viet, Le stopped paying him for copiers and reimbursing him for expenses. According to Le, Viet began sending damaged copiers that could not be resold in Vietnam and continued to do so even after Le asked him to stop. The relationship ended in September 2016.

Claiming to have been an employee all along, Viet brought this FLSA suit against Le and Copier Victor. He alleged that Le and Copier Victor violated the FLSA by not paying him overtime wages from April 2014 to September 2016. During this time, the complaint asserted, Viet worked about 60 hours per week. Viet also alleged that Le and Copier Victor violated the FLSA by not reimbursing him for expenses incurred for the business. (Viet originally filed an additional breach-of-contract claim against Le and Copier Victor, but the parties agreed to litigate their competing state-law claims in a case that Copier Victor had brought against Viet in state court.)

The district court granted summary judgment to Le and Copier Victor. The court assumed that Viet qualified as an employee under the FLSA for purposes of its ruling. It concluded, however, that Viet's evidence that he had worked more than 40 hours per week did not suffice to withstand summary judgment. The court described Viet's testimony about the hours he had worked as "equivocal, conclusory, and lacking in relevant detail." Viet also provided no written evidence to corroborate his claim that he worked 60 hours per week, despite suggesting that his emails would back up his testimony. Turning to Viet's claimed expenses, the court next held that the FLSA did not entitle him to any reimbursement. The court found instead

that Viet should attempt to recover those expenses through his breach-of-contract claim pending in state court. Viet appealed.

II

It is not at all clear that Viet qualifies as an employee covered by the FLSA under the multi-factored balancing test we use to answer that question. *Compare Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1054–63 (6th Cir. 2019), *with Donovan v. Brandel*, 736 F.2d 1114, 1117–20 (6th Cir. 1984). The district court, however, assumed that Viet was an employee for purposes of its ruling, and Le and Copier Victor do not seek to defend its judgment on this alternative ground. We thus make the same assumption on appeal. Taking that assumption as a given, Viet says the district court committed two errors: (1) it wrongly found that he lacked enough evidence to create a jury question over whether he worked overtime, and (2) it wrongly interpreted the FLSA to bar his request for expenses.

A

The FLSA requires an employer to pay its employees overtime wages at a rate of not less than one-and-a-half times the regular rate of pay for every hour that employees work over 40 hours per week. *See Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015); 29 U.S.C. § 207(a)(1). An employee who claims that he was not paid this overtime rate "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972); *O'Brien v. Ed Donnelly Enterps., Inc.*, 575 F.3d 567, 602–03 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). If an employee carries this initial burden but cannot recall the precise number of unpaid overtime hours, the employee may seek the work records that the FLSA requires employers to maintain. *Anderson*, 328 U.S. at 687; 29 U.S.C. § 211(c). Yet if an employer has failed in its statutory duty to keep these records, the Supreme Court has held that the employee may still establish damages by "produc[ing] sufficient evidence to show the amount and extent of [his uncompensated] work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. This relaxed burden, however, applies to

damages questions only *after* an employee has met the initial burden to "establish[] liability" by showing that the employee performed uncompensated overtime work. *O'Brien*, 575 F.3d at 603; *see also Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (3d Cir. 2013). In other words, the ordinary burden of proof governs the threshold question whether the plaintiff worked overtime at all.

This case concerns that threshold question: Does Viet's evidence permit a reasonable jury to conclude that he worked more than 40 hours per week during any given week between April 2014 and September 2016? To answer that question, we begin with a general refresher on Federal Rule of Civil Procedure 56. Rule 56 directs a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This language compels summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmoving party has not made that sort of showing if "the record taken as a whole could not lead a rational trier of fact to find" in the party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted). That is true even if the moving party does not itself come forward with evidence affirmatively negating the disputed element. *Celotex*, 477 U.S. at 323.

So what does it take for a party to establish that a "rational trier of fact" could rule in its favor on a disputed element? The party must identify "specific facts, as opposed to general allegations," establishing the element. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727.2, at 501 (4th ed. 2016). Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). A discrimination plaintiff's generic testimony that she was qualified for a position, for example, does not suffice to withstand summary judgment on that qualification issue without specific facts

supporting this general testimony. *Id.*; *see also, e.g.*, *Tschappatt v. Crescent Metal Prods., Inc.*, __ F. App'x __, 2020 WL 260985, at *2 (6th Cir. Jan. 17, 2020); *Mosquera v. MTI Retreading Co.*, 745 F. App'x 568, 573 (6th Cir. 2018); *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

When applying these general Rule 56 standards in this FLSA context, courts have considered the level of evidence that employees must present to create a jury question over whether they worked overtime. Generally speaking, if an employee describes a specific work schedule exceeding 40 hours, courts have found the testimony sufficient. If, by contrast, the employee testifies generically that the employee worked overtime without providing details to support this claim, courts have found that the testimony falls short.

On one side of things, our court has twice found evidence sufficient when it detailed the specific hours that the employee typically worked. *See Moran v. Al Basit LLC*, 788 F.3d 201, 205–06 (6th Cir. 2015); *Keller*, 781 F.3d at 816. In *Keller*, Michael Keller installed satellite dishes for "a satellite-internet-dish installation company." 781 F.3d at 804. We suggested in dicta that Keller's testimony that he worked more than 40 hours per week might satisfy Rule 56, but we did not "rely on [his] testimony alone[.]" *Id.* at 816. That is because his employer conceded that Keller worked six days a week, that he performed four jobs per day, and that each job would take about two-and-a-half hours. *Id.* So Keller presented specific evidence allowing a rational jury to conclude that he regularly worked "sixty hours each week" excluding the travel time between jobs and administrative tasks. *Id.*

Similarly, the employee in *Moran*, Jeffery Moran, held a mechanic's job in an auto repair shop. 788 F.3d at 202. Moran testified that he had agreed to work six days per week during the store's hours of operation, which added up to "fifty-eight hours a week." *Id.* Not only that, Moran got to the shop a half hour before it opened and stayed until the day's work was done, which meant that he typically worked "an average of sixty-five to sixty-eight hours per week." *Id.* at 202–03. Despite conflicting evidence from the employer, we found this testimony sufficient to create a genuine dispute of material fact over whether Moran had worked overtime: Moran's "testimony coherently describe[d] his weekly work schedule, including typical daily start and end times which he used to estimate a standard work week of sixty-five to sixty-eight

hours." *Id.* at 205. And employees need not "recall their schedules with perfect accuracy in order to" avoid summary judgment. *Id.*

On the other side of things, courts have deemed conclusory allegations about an employee's work schedule insufficient under Rule 56. *See, e.g.*, *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059–60 (8th Cir. 2014); *Carmody*, 713 F.3d at 407; *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690–91 (7th Cir. 2010); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). *Holaway* provides the best example. Greg Holaway worked as a field service engineer for a company that made 3D printers, and traveled to client sites to install or service printers. 771 F.3d at 1058. Holaway estimated that he typically worked 60 to 70 hours per week, but provided few details showing that his tasks required more than 40 hours per week. *Id.* He said that he would spend "two to three hours doing preparation work" before heading to any jobs and "three to four hours traveling to locations." *Id.* He also mentioned several after-hours weekly activities, including preparing expense reports. *Id.* The Eighth Circuit found that this testimony was too conclusory under Rule 56. *Id.* at 1059–60. Holaway "failed to put forward any evidence of the amount and extent of his work in excess of forty hours a week for any week worked for [the company], let alone evidence of excess hours worked every week of his employment." *Id.* at 1059. His general testimony about his average hours also did not suffice to create a jury question because he did not support it with a "meaningful explanation of how he arrived at his final estimate of sixty hours a week, every week, of his employment." *Id.* at 1060.

Where does Viet's case fall? It is more like the Eighth Circuit's decision in *Holaway* than our decisions in *Moran* or *Keller*. The district court correctly held that Viet's testimony was too "equivocal, conclusory, and lacking in relevant detail" to create a genuine dispute of material fact under Rule 56.

Begin with Viet's estimate of his average weekly schedule. He claimed that he typically worked 60 hours per week. Yet, just as in *Holaway*, that "bare assertion[]" is too conclusory to create a jury question over whether Viet worked overtime in any given week between April 2014 and September 2016. 771 F.3d at 1059; *see also Mosquera*, 745 F. App'x at 573.

And unlike *Moran* and *Keller*—where the evidence established specific day-to-day hourly routines that added up to well over 40 hours per week, *see Moran*, 788 F.3d at 202–03; *Keller*, 781 F.3d at 816—Viet did not fill in his general 60-hour estimate with specific facts about his daily schedule. Without Viet's general estimate, his deposition testimony would leave a jury simply guessing at the number of hours he worked in any given week. Le lived primarily in Vietnam, and Viet worked independently and set his own daily hours. Yet he did not provide even basic details about his typical day (such as by saying, for example, that he preferred to work from 8 to 6 or 9 to 8). And deposition questions seeking to probe his daily or weekly routine were met with entirely conclusory responses. When asked, for example, whether he worked 10 hours per day, Monday through Saturday, he said only: "Whenever like I have time I do it." When asked the days of the week that he typically worked, he responded: "Almost every day." When asked how much time he spent working from his house, he answered: "So much time. Every time I got free time." He offered no estimate of his daily hours or schedule.

Unable to rely on a usual workweek to establish overtime work, Viet also cannot rely on estimates about the time required for his duties. Take, for example, his primary duty of searching online for copiers. He testified that it took him at least 30 minutes to find a machine. Yet he conceded that Le never asked him to find 80 copiers in a week (which would add up to 40 hours of searching). And he gave conflicting testimony about the average search time, noting that some copiers took up to 20 hours to find. He also provided no estimates of the average number of copiers he searched for each day. Was it 10? Was it 100? We do not know.

Next consider Viet's work at the warehouse arranging for shipments. He gave no estimate of the amount of time each week he spent there. He instead invoked another conclusory response: "Sometimes I work at the warehouse" but "not all the time[.]" He also conceded he was not at the warehouse enough to have mail delivered there. And although he explained some of the tasks he performed at the warehouse—sweeping the floors, wrapping and hauling machines, waiting for deliveries—the evidence does not show how often he did them.

All told, Viet could withstand summary judgment only if we adopted a legal rule that conclusory estimates about an employee's average workweek allow a rational jury to conclude that the employee worked overtime. Like the Eighth Circuit, we reject that rule. Here, as in

*Holaway*, Viet's "evidence is inconsistent and provides no details which would allow a jury to determine [that he] worked beyond forty hours in any specific week." 771 F.3d at 1060.

Viet's contrary arguments do not convince us otherwise. He starts with arguments that misread both the FLSA and Rule 56. As for the FLSA, Viet says that it places the onus on Copier Victor to keep accurate records and that the Supreme Court has relaxed the standard of proof when an employer does not do so. *Anderson*, 328 U.S. at 687–88. Yet this relaxed standard applies to damages calculations only after an employee has shown "a violation under the FLSA." *O'Brien*, 575 F.3d at 603. Viet failed to present evidence that creates a genuine dispute of material fact about Le and Copier Victor's purported FLSA "liability." *Id.*

As for Rule 56, Viet argues that Le and Copier Victor failed to identify evidence showing that he worked *less* than 40 hours per week. Yet Viet bears the burden to prove that he worked overtime during every week for which he seeks overtime pay. *Id.* at 602–03. Because Viet bears this burden, Le and Copier Victor are entitled to summary judgment if "the record taken as a whole could not lead a rational" jury to conclude that he worked overtime. *Ricci*, 557 U.S. at 586 (citation omitted). And Viet's "[c]onclusory statements" about his overtime work do not allow a rational jury to make that conclusion. *Alexander*, 576 F.3d at 560. So Viet failed to "establish the existence of an element essential to [his] case," and Le and Copier Victor had no further duty to present evidence negating the overtime work. *Celotex*, 477 U.S. at 322–23.

Viet next points to evidence other than his testimony to create a fact question over whether he ever worked more than 40 hours per week. He argues that Copier Victor's "volume of business" (roughly $1.2 million over three years) and his emails with Le "at all hours of the day and night" indirectly bolster his testimony. We agree with the district court that this evidence would not allow the jury even to "hazard a guess as to how many hours" he worked. If anything, the lack of documentary evidence cuts against Viet. He testified that his many work emails would corroborate his claim that he worked overtime. Yet, as the district court noted, Viet did not rely on these emails at this summary-judgment stage. And while he argues that Copier Victor failed to produce them during discovery, he did not assert any discovery violations or ask the district court for more time before ruling on the summary-judgment motion. *Cf.* Fed. R. Civ. P. 56(d).

Viet lastly complains that the district court created a "seemingly impossible standard" for employees to withstand summary judgment over whether they worked more than 40 hours per week. Not at all. *Moran* and *Keller* show that employees do not face heavy burdens. *See Moran*, 788 F.3d at 205; *Keller*, 781 F.3d at 816. They need not "recall their schedules with perfect accuracy in order to survive a motion for summary judgment." *Moran*, 788 F.3d at 205. They must only "coherently describe[]" their day-to-day work schedules or the time it takes to complete their duties so that a rational jury could find that they worked more than 40 hours in the weeks claimed. *See id.* What they may not do is simply turn a complaint's conclusory allegations about overtime work into an affidavit's conclusory testimony about overtime work and expect to get a jury trial under Rule 56. *See Lujan*, 497 U.S. at 888.

B

Viet's failure to show that he worked overtime also dooms his distinct claim that Le and Copier Victor failed to reimburse him for expenses incurred while pursuing their joint business. On appeal, Viet seeks $1,200 in unreimbursed telephone expenses. He cites caselaw holding that employers sometimes may not compel employees to pay certain expenses if those expenses would cut the employees' total pay below the level that the FLSA requires employers to pay in minimum or overtime wages. *See Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 125 (E.D.N.C. 2011) (discussing 29 C.F.R. § 531.35). In this case, however, Viet does not assert that his pay fell below the required minimum wage. And because we have held that he did not present sufficient evidence that he ever worked overtime hours, he cannot show that these expenses cut into any overtime pay that he was entitled to receive. The district court thus properly held that Viet could not recover his expenses under the FLSA (as compared to his breach-of-contract suit).

We affirm.