NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0060n.06

No. 20-1342

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 28, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ERIC EARNEST, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| GENESEE COUNTY, MICHIGAN; DANIEL | ) | |
| MILLER, | ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.

CLAY, Circuit Judge. Plaintiff Eric Earnest, Jr. appeals the district court's grant of summary judgment to Defendants Genesee County, Michigan, ("the County") and Daniel Miller, a former Genesee County deputy sheriff. Plaintiff brought a 42 U.S.C. § 1983 claim against Miller in his individual capacity for excessive force in violation of the Fourth Amendment and also sued him in his official capacity. Plaintiff asserted a claim against the County under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Defendants moved for summary judgment on multiple grounds, including that Miller was entitled to qualified immunity. The district court granted the motion and entered judgment in favor of Defendants. Because the district court correctly determined that there was no genuine issue of material fact as to whether Plaintiff's Fourth Amendment right to be free from excessive force was violated, we affirm.

## BACKGROUND

### A. Factual Background

On February 28, 2016, Plaintiff became upset because he was unable to see his son. In the afternoon, he went to a friend's house and drank some liquor. Eventually, Plaintiff and his friend went to a bar and split a pitcher of beer. They left, and Plaintiff went home for a few hours. Plaintiff then returned to the bar by himself, had more beer, and left to go home around 2:00 a.m. According to Plaintiff, his vehicle stalled as he was driving home. He then claims he tried to call a friend to help, but was unsuccessful. Concerned that his car would be impounded if he walked home, Plaintiff decided to sleep in his vehicle. Plaintiff's next memory is waking up in an ambulance, strapped down, with someone poking his arm. He has no recollection of how he left his vehicle or came to be in the ambulance.

Sometime between 2:00 a.m. and 3:00 a.m. on February 29, 2016, Miller, then a deputy with the Genesee County Sheriff's Department, responded to a reported accident. When he arrived on the scene, he found a vehicle parked at an intersection, with wheels off the roadway, and resting on a support wire for a telephone pole. Miller was personally aware that the intersection was located in a high-crime area in the City of Flint, characterized by incidents of drug trafficking, felonious assault, domestic violence, and homicide.

When Miller approached the vehicle, he saw Plaintiff sitting upright in the driver's seat. Miller's initial assessment was that Plaintiff was drunk and passed out because he smelled alcohol on Plaintiff's breath. Miller lightly shook Plaintiff, gave him open-handed pats, and spoke to him in a normal speaking voice in an attempt to wake him. Plaintiff did not respond to any of these efforts, and after Miller satisfied himself that Plaintiff was breathing and had a pulse, he returned

to his vehicle, advised dispatch that he believed the driver was drunk but unharmed, and waited for mobile medical response ("MMR").

Shortly after the MMR ambulance arrived, Miller activated his body camera. The video depicts emergency medical technician ("EMT") Dwayne Rose attempt to wake Plaintiff up by patting him and telling him to wake up. When it became clear that these efforts at waking Plaintiff were going to be unsuccessful, Miller and Rose determined that they would have to pull Plaintiff out of the vehicle. As Rose started to move Plaintiff, Plaintiff groaned and swung his left arm in Rose's direction.

After Plaintiff had been removed from the vehicle, the video shows Miller and Rose removing Plaintiff's sweatshirt, pushing him toward a stretcher, and ultimately taking him to the ground. At this point, Miller was on top of Plaintiff and told Plaintiff to stop resisting, and Plaintiff responded that he was not resisting. After a short time on the ground, Miller and Plaintiff stood up, and Miller pressed Plaintiff up against the side of Plaintiff's vehicle. The video then shows the pair going back to the ground, where Miller again told Plaintiff to stop resisting, and Plaintiff responded again that he was not resisting. Miller repeatedly told Plaintiff to put his hands behind his back, and while Plaintiff responded "OK," the video shows that Plaintiff's hands were not placed behind his back. Miller and Plaintiff rose again, but Miller again took Plaintiff to the ground and yelled at Plaintiff to put his hands behind his back.

The video then shows Miller and Rose holding Plaintiff on the ground, while Miller repeatedly yells at Plaintiff to put his hands behind his back, to which Plaintiff responds that he cannot. Eventually, Miller and Rose managed to get both of Plaintiff's arms behind him, and Miller handcuffed Plaintiff's hands behind his back. After Plaintiff was handcuffed, Miller and Rose continued to hold Plaintiff on the ground, while Plaintiff made indistinct sounds and words.

3

Eventually, Miller and another police officer placed Plaintiff on the stretcher, and Plaintiff was strapped in.

Plaintiff suffered a number of injuries as a result of the February 29, 2016 incident. Hospital records show that he had a head contusion and abrasions of his right elbow and left wrist. Plaintiff's booking photos and other pictures show bruising on his face. Plaintiff also reported suffering from headaches, nausea, and vomiting after the incident. He claims these latter symptoms are consistent with having sustained a severe concussion.

### B. Procedural Background

On March 2, 2018, Plaintiff filed a two-count complaint against the County and Miller. He asserted a § 1983 excessive force claim against Miller and claimed that the County failed to properly train and supervise its officers regarding constitutional rights, reasonable seizures, and the proper use of force. After discovery, Defendants filed a motion for summary judgment on multiple grounds, including qualified immunity for Miller.

On March 18, 2020, the district court entered an opinion and order granting Defendants' motion for summary judgment, *Earnest v. County of Genesee*, No. 2:18-cv-10729, 2020 WL 1285626 (E.D. Mich. Mar. 18, 2020), without a hearing. Plaintiff timely appealed.

### DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). All reasonable inferences are drawn in the non-moving party's favor except "to the extent that they are 'blatantly contradicted by the record.'" *Mitchell v. Schlabach*, 864 F.3d 416, 418 (6th Cir. 2017) (quoting *Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011)).

In this case, the critical record evidence is a video from Miller's body camera depicting the removal of Plaintiff from his vehicle until he is strapped onto a stretcher. This video, like other evidence, is viewed in the light most favorable to Plaintiff on summary judgment. *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008). However, "[t]o the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## B. Qualified Immunity

The district court correctly determined that Miller was entitled to qualified immunity on Plaintiff's excessive force claim because there is no genuine dispute of material fact that Miller used unreasonable force on February 29, 2016. "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Johnson v. City of Saginaw*, 980 F.3d 497, 507 (6th Cir. 2020) (quoting *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)). It is well-established that the Fourth Amendment protects individuals from the use of excessive force by law enforcement officers. *Graham v. Connor*, 490 U.S. 386, 395 (1989). It is equally well-established that the touchstone for this constitutional inquiry is reasonableness and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "[T]he amount of force must be objectively reasonable under the totality of the circumstances" from the perspective of a reasonable

officer at the time of the alleged excessive force. *Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020) (citing *Graham*, 490 U.S. at 396).

Miller's use of force was reasonable because Plaintiff resisted arrest and refused to put his hands behind his back despite repeated instructions to do so. We have held that it is reasonable to use a taser, batons, and pepper spray to subdue "a suspect actively resisting arrest and refusing to be handcuffed . . . ." *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012). In this case, Miller did not even use such methods, instead utilizing takedowns to subdue Plaintiff and manually forcing his hands behind his back so that they could be handcuffed. In fact, Miller warned Plaintiff that continued resistance would result in the use of a taser, although it was never deployed. We have also held that a person who refuses to be handcuffed by a law enforcement officer thereby resists arrest such that tasering and knee strikes are justified. *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015). These holdings control here. Miller did not violate Plaintiff's constitutional right to be free from excessive force and is entitled to qualified immunity.

Plaintiff's contention that Miller's body camera video creates a genuine issue of material fact as to whether excessive force was used is unavailing. We note that Plaintiff has no memory of the incident and that his opposition to summary judgment depends entirely on the body camera video. The video shows what appears to be, and what Miller perceived to be, Plaintiff attempting to strike EMT Rose. Accordingly, Plaintiff's assertion on appeal that he did not swing at EMT Rose is "blatantly contradicted by the record" and cannot be relied upon by this Court. *Scott*, 550 U.S. at 380. Similarly, the video shows that despite repeated and insistent commands that Plaintiff put his hands behind his back so that he could be handcuffed, he refused to do so. Plaintiff's conclusory assertions that Miller's efforts to subdue him were unjustified does not create a genuine

issue of material fact sufficient for his claims to survive summary judgment. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020).

Plaintiff also argues that the extent of his injuries shows that Miller used excessive force. We have been clear, however, that the critical question in Fourth Amendment cases is not the extent of the injury, but whether the force used by the law enforcement officer was gratuitous. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252–53 (6th Cir. 2010). The evidence of Plaintiff's injuries to his head and arms and his allegation of a concussion do not create a genuine dispute of material fact that Miller used excessive force to subdue Plaintiff as he continued to resist arrest. Moreover, the only cases that Plaintiff cites in support of this argument involve excessive force claims by prisoners under the Eighth Amendment, *Whitley v. Albers*, 475 U.S. 312 (1986), in his briefing, and *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), at oral argument. But even in that context the Supreme Court has been clear that "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Plaintiff has not shown that his Fourth Amendment right to be free from the use of excessive force was violated. Accordingly, the district court properly determined that Miller was entitled to qualified immunity and granted summary judgment in his favor. *See Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (recognizing that law enforcement officer is entitled to qualified immunity if a plaintiff cannot show either that his constitutional rights were violated or that the right was clearly established).

## C. *Monell*

The district court also properly granted summary judgment to the County on Plaintiff's *Monell* claim on the same grounds it granted qualified immunity to Miller—there was no requisite

constitutional violation to support *Monell* liability. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).

Plaintiff did not preserve his claim that Miller is liable in official capacity for review because he did not develop any such argument in his appellate briefing. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009) (describing methods of preserving argument on appeal). Even if this claim had been preserved, the district court correctly found that the official capacity suit failed for the same reasons the *Monell* claim against the County failed. An official capacity claim against an officer is simply an alternative means of pleading a cause of action against a municipality. *See Morgan v. Fairfield Cnty.*, 903 F.3d 553, 560 (6th Cir. 2018) (recognizing that official capacity claim is correctly analyzed as one against the county).

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment to Defendants.