NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0456n.06

No. 24-5207

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Nov 18, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| LYNN KIZER, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| ST. JUDE CHILDREN'S RESEARCH | ) | |
| HOSPITAL, | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: BATCHELDER, MOORE, and BUSH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Lynn Kizer appeals from the district court's decision granting summary judgment in favor of her employer, St. Jude Children's Research Hospital, on Kizer's claims that, in violation of Title VII, St. Jude failed to provide her with a religious accommodation. Because we hold that St. Jude presented evidence showing that accommodating Kizer would have caused an undue hardship for St. Jude, and because Kizer's evidence to the contrary cannot support a jury verdict in her favor, we **AFFIRM** the district court's grant of summary judgment in favor of St. Jude.

## I. BACKGROUND

In 2021, Lynn Kizer was employed by St. Jude Children's Research Hospital as an Electronic Health Record ("EHR") Applications Analyst assisting with preparations for the hospital's two-year-long transition to a complex new EHR system known as "Epic." R. 1 (Compl. ¶ 4) (Page ID #1–2). That same year, a vaccine for COVID-19 became available. Because St. Jude

primarily treats vulnerable pediatric patients, the hospital implemented a mandatory COVID vaccine policy for its employees and established a process for considering requests for religious and medical accommodations. R. 31-5 (Bottenfield Decl. ¶¶ 22–25) (Page ID #178–79). Kizer submitted one such request, stating that her sincerely held religious beliefs prevented her from receiving the vaccine and asking for permission to work remotely. R. 31-14 (Accommodation Req. at 5–6) (Page ID #343–44). St. Jude gathered information about Kizer's position, including about the upcoming launch (or "go live") of the new Epic system and determined that it could not reasonably accommodate Kizer because her job required her to work in person in clinical areas and in contact with clinical people. R. 31-5 (Bottenfield Decl. ¶¶ 36–43) (Page ID #182–83). St. Jude ultimately terminated Kizer for failing to become vaccinated. R. 1 (Compl. ¶ 6) (Page ID #2). Kizer brought suit for religious discrimination and failure to accommodate under Title VII, *id.* ¶¶ 46–64 (Page ID #10–13), and now appeals from the district court's grant of summary judgment in favor of St. Jude.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *Tepper v. Potter*, 505 F.3d 508, 513 (6th Cir. 2007). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[B]oth the movant and the opponent must support their factual positions either by directing the court's attention to materials in the record or by showing that the cited materials do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce any admissible evidence to support the fact." 10A

2

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2721 (4th ed. June 2024 Update). We construe all reasonable inferences in favor of the nonmoving party. *Tepper*, 505 F.3d at 513. The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## B. Title VII

An employer violates Title VII if, as relevant here, the employer:

(1) . . . fail[s] or refuse[s] to hire or . . . discharge[s] any individual, or otherwise . . . discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) . . . limit[s], segregate[s], or classif[ies] [its] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

For purposes of Title VII, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Here, Kizer alleges that St. Jude violated Title VII by failing to accommodate her sincerely held religious belief that prevented her from complying with St. Jude's COVID vaccine mandate. R. 1 (Compl. at 10–13) (Page ID #10–13).

"The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Tepper*, 505 F.3d at

514 (quoting *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)). To establish a prima facie case, a plaintiff must show that: "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Id.* (quoting *Smith*, 827 F.2d at 1085).

The district court found, and we agree, that Kizer established her prima facie case: First, "Defendant[] . . . assumed that all employees who requested religious accommodations held sincere religious beliefs. Second, Plaintiff informed St. Jude of her beliefs by submitting an accommodation request and stating the reason for her objection to the vaccine. [St. Jude] received and reviewed Plaintiff's request. Third, St. Jude discharged Plaintiff on September 24, 2021, when she did not comply with its mandatory vaccine policy." R. 42 (Order at 9) (Page ID #692) (citations omitted).

The burden then shifted to St. Jude "to show that it could not reasonably accommodate the employee without undue hardship." *Tepper*, 505 F.3d at 514 (quoting *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002)). The employer must thus show that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business," meaning that the statutory requirement of "'undue hardship' is [met] when a burden is substantial in the overall context of an employer's business." *See Groff v. DeJoy*, 600 U.S. 447, 468, 470 (2023).

## C. Kizer's Legal Arguments

On appeal, Kizer first argues that she submitted evidence to the district court showing that St. Jude failed to engage her in an interactive process to find an accommodation (which she

believes was required by Title VII) and that the district court considered improper expert testimony. Appellant Br. at 28, 34, 38–42. Kizer also intimates that the district court erred by not ruling on her discovery-related sanctions motion. *Id.* at 36–38.

### 1. Interactive Process

Kizer argues that the district court erred in granting St. Jude's motion for summary judgment because she presented evidence below that St. Jude did not consult her or her direct supervisor personally in the course of considering her accommodation request and thus failed to engage in a "[g]ood [f]aith [i]nteractive [p]rocess." Appellant Br. at 28–34. Though Kizer frames this assertion as a factual dispute, she has pointed to no legal authority that would require employers considering Title VII accommodations (rather than accommodations under the Americans with Disabilities Act (ADA)) to engage in such a process, much less any legal authority holding that Title VII required St. Jude to consult specifically with Kizer or her direct supervisor, Chrystina Carter, rather than Kizer's ultimate supervisor, Colette Hendricks.[1]

Neither the ADA nor Title VII contains a statutory reference to a required interactive process, but the regulations implementing the ADA state that "[t]o determine the appropriate reasonable [disability] accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

---

[1]The authority Kizer cites in support of her contention that Title VII requires an interactive or cooperative process refers to an employee's duty to cooperate with the employer, rather than the inverse. *See* Appellant Br. at 28 (citing *Smith*, 827 F.2d at 1085); *Smith*, 827 F.2d at 1085 ("Although the burden is on the employer to accommodate the employee's religious needs, the employee must make some effort to cooperate with an employer's attempt at accommodation," a duty which the employee "'cannot shirk'" (quoting *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977)).

Title VII's regulations contain no similar reference to an interactive process. Kizer does not ask us to determine whether the ADA's regulatory interactive-process requirement applies to religious-accommodation claims under Title VII. But even if we assume that such a requirement applied, St. Jude would satisfy it, particularly as defined by regulatory guidance specific to Title VII.

The Equal Employment Opportunity Commission (EEOC) publishes a nonbinding compliance guide for employers covered by Title VII which provides that, "[a]lthough an employer is not required by Title VII to conduct a discussion with an employee before making a determination on an accommodation request, as a practical matter it can be important to do so." U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2021-3, *Compliance Manual on Religious Discrimination* § 12-IV(A)(2) (2021) (hereinafter "EEOC Compliance Manual"). The manual continues, "[o]nce the employer becomes aware of the employee's religious conflict, the employer should obtain promptly whatever additional information is needed to determine whether a reasonable accommodation is available without posing an undue hardship on the operation of the employer's business." *Id.* Importantly, the EEOC concludes that "[f]ailure to confer with the employee is not an independent violation of Title VII. But as a practical matter, such failure can have adverse legal consequences." *Id.*

As an example, the manual cites our decision in *EEOC. v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991), noting that "where an employer has made no effort to act on an accommodation request, courts have found that the employer lacked the evidence needed to meet its burden of proof to establish that the plaintiff's proposed accommodation would actually have posed an undue hardship." EEOC Compliance Manual § 12-IV(A)(2). In *Arlington Transit Mix*, we held that the defendant-employer had violated the plaintiff-employee's Title VII rights because

there was no evidence that the employer "made any effort to find a way to avoid the collision" between a new scheduling system and the employee's religious beliefs. 957 F.2d at 222.

The same is not true here. St. Jude submitted undisputed evidence that it developed and implemented a systematic process for considering requests for religious accommodation, including by "obtain[ing] promptly whatever additional information [was] needed to determine whether a reasonable accommodation [was] available." EEOC Compliance Manual § 12-IV(A)(2); *see* R. 31-5 (Bottenfield Decl. ¶¶ 30–31, 33–35) (Page ID #180–81); R. 31-8 (Bottenfield Dep. at 38:13–41:9) (Page ID #386–89). Kizer's request provided ample information about her religious beliefs regarding the vaccine. R. 31-14 (Accommodation Req. at 5–6) (Page ID #343–44). St. Jude presented evidence that it obtained and developed information about the risk of COVID exposure in the context of its mission of treating vulnerable juvenile patients, R. 31-5 (Bottenfield Decl. ¶ 6, 25) (Page ID #175, 179); R. 31-20 (Hijano Decl. ¶ 9) (Page ID #419), as well as evidence that St. Jude obtained information about Kizer's essential duties and whether her job could be performed remotely, R. 31-19 (Hendricks Decl. ¶ 7) (Page ID #414); R. 31-5 (Bottenfield Decl. ¶ 41) (Page ID #183); R. 31-16 (Bottenfield Notes at 1) (Page ID #347); R. 31-18 (Bottenfield Dep. at 39:20–40:15, 51:10–20, 53:1–12) (Page ID #387–88, 394–95).

Even under the ADA, an employer's failure to engage in an interactive process "is actionable only if it prevents identification of an appropriate accommodation *for a qualified individual*." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 766 (6th Cir. 2015) (en banc) (quoting *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013)) (emphasis in *Ford*). "In other words, if the employee fails to create a genuine dispute of material fact that a reasonable accommodation would have allowed her to perform the essential functions of her job, she cannot

7

survive summary judgment on an interactive-process claim." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017). As we hold below, Kizer has not "present[ed] evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Ford Motor Co.*, 782 F.3d at 766 (quoting *Basden*, 714 F.3d at 1039).

Kizer argues that St. Jude should be required to present evidence that it considered various alternative accommodations proposed by Kizer after the fact, and she asserts that St. Jude failed to engage in a good-faith interactive process because "[t]he only accommodation it ever considered . . . was that all the job duties of the [religious objector] had to be able to be performed off campus." Appellant Br. at 28. But even under the ADA's explicit interactive-process requirement, ". . . [an] employer has the burden of showing how [a proposed] accommodation would cause an undue hardship, but the employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202–03 (6th Cir. 2010). And we have held in other Title VII contexts that "[i]n deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Ultimately, St. Jude presented evidence that, because unvaccinated people posed a safety risk to its vulnerable and unable-to-be-vaccinated juvenile patient population, the presence of any unvaccinated staff on campus would be an undue hardship in the context of St. Jude's core business

and mission. *See* R. 31-5 (Bottenfield Decl. ¶ 6, 25) (Page ID #175, 179); R. 31-20 (Hijano Decl. ¶ 9) (Page ID #419). Kizer has submitted no contrary evidence showing that it would be safe for unvaccinated people to be on campus. In fact, she expressly disclaims any "challenge[] [to] the legitimacy of St. Jude to implement a mandatory COVID-19 vaccine policy." Appellant Br. at 12.

We thus cannot say that, as a matter of law, St. Jude violated an implicit interactive-process duty under Title VII (as yet unrecognized in this circuit). St. Jude has presented evidence of a thorough information-gathering process with input from Kizer herself. And the EEOC is clear that Title VII contains no such hard and fast requirement of an interactive process. As discussed below, Kizer has not provided legal authority to support a contrary conclusion or sufficient factual evidence to allow a reasonable jury to find that St. Jude could have accommodated Kizer without undue hardship.

We first dispense with two (arguably) legal issues before reaching the meat of the issue on appeal—whether there is a dispute of material fact about whether St. Jude could have accommodated Kizer without undue hardship.

### 2. Expert Evidence

Kizer argues that, because "[s]he did not challenge the mandate nor ask for an accommodation that in any way could be construed as asking to be present among a vulnerable population or her co-workers," it was reversible error for the district court to consider what Kizer considers to be expert evidence and testimony from Dr. Diego Hijano regarding the effects of COVID-19 and efficacy of the vaccine.[2] Appellant Br. at 38–42.

---

[2]Dr. Hijano was a corporate witness for St. Jude under Rule 30(b)(6). *See* R. 31-4 (St. Jude Statement of Undisputed Material Facts ¶ 13) (Page ID #164). As medical director of St. Jude's occupational health program and member of committees overseeing the hospital's COVID response, vaccine mandate, and accommodation processes,

Although we are inclined to agree with the district court that Dr. Hijano's testimony was proper lay testimony about St. Jude's rationale for its business judgment to implement a vaccine mandate, *see* R. 42 (Order at 4 n.3) (Page ID #687), we note that the district court only briefly cited Dr. Hijano's declaration in its background section to describe St. Jude's reasoning in implementing its response to COVID-19, *id.* at 3–4 (Page ID #686–87).

Even if Dr. Hijano's testimony were improper expert evidence, Kizer does not explain what relevance it can have on appeal given that she expressly disclaims any argument about the legitimacy of the COVID vaccine mandate and attacks only St. Jude's failure to accommodate her. Because these arguments do not turn on the characteristics of COVID or the vaccine, we decline to address Kizer's objection to Dr. Hijano's testimony.

### 3. Sanctions

On appeal, Kizer alleges that "St. Jude intentionally attempted to obstruct and prevent [Kizer] from interviewing the immediate supervisor, Christyna Carter, and as such [Kizer] submitted a Motion for Sanctions, which was never addressed by the District Court." Appellant Br. at 36–37. Kizer argues that St. Jude withheld information about Carter because Carter had superior knowledge of Kizer's responsibilities and would testify that "Kizer could have 'easily' been accommodated in a number of ways." *Id.* at 33, 36–37. But Kizer does not explain how or why the district court's failure to rule on her sanctions motion should constitute reversible error. Nor does Kizer explain how the alleged nondisclosure of contact information regarding Carter

---

Dr. Hijano was competent to and did testify about St. Jude's rationale for implementing the vaccine mandate. *See* R. 31-20 (Hijano Decl. ¶¶ 1–5, 10) (Page ID #418–20).

prejudiced Kizer given that she ultimately submitted a declaration from Carter attached to her opposition to summary judgment. *See* R. 32-3 (Carter Decl.) (Page ID #503–05).

Instead, Kizer appears to complain that this alleged nondisclosure is a reason to send the case to a jury. Appellant Br. at 37 ("Ms. Kizer was looking forward to trial, then, where she could cross-examine [St. Jude's witness] in front of a jury, as well as present testimony from her witness, Ms. Carter, so they could determine who actually had the knowledge critical to determining whether or not Ms. Kizer's employment had to be terminated or whether an accommodation could have been made."). Because we hold below that the district court did not weigh witnesses' credibility and because, even after considering Carter's declaration, the district court correctly found that no dispute of material fact existed, we need not address Kizer's unelaborated sanctions argument on appeal.

## D. Kizer's Factual Arguments

Kizer further argues that the declaration authored by Carter, Kizer's direct supervisor, created a dispute of material fact as to whether St. Jude could have accommodated Kizer by allowing her to work remotely 100% of the time (potentially assigning her in-person duties to vaccinated employees), transferring her to another job that could have been completed 100% remotely, or simply delaying the issue with a "temporary accommodation." *See id.* at 12–13, 25, 27. Accordingly, Kizer argues that the district court erred by resolving factual disputes and credibility issues that should have been left to the jury. *Id.* at 13.

### 1. St. Jude's Evidence

St. Jude presented evidence that to allow unvaccinated individuals to work on campus would pose a safety risk to the hospital's vulnerable juvenile patients (who were largely

11

immunocompromised and unable to be vaccinated), thereby creating an undue hardship for St. Jude. *See* R. 31-5 (Bottenfield Decl. ¶ 6, 25) (Page ID #175, 179); R. 31-20 (Hijano Decl. ¶ 9) (Page ID #419). St. Jude's evidence also showed that retaining its pre-vaccine COVID control measures for unvaccinated employees, including extensive testing and contact-tracing protocols, would be costly in both time and money. *See* R. 31-5 (Bottenfield Decl. ¶¶ 26–27) (Page ID #179); R. 31-18 (Bottenfield Dep. at 14:10–15:4, 59:1–4) (Page ID #375–76, 399); *see generally id.* at 58:13–61:12 (Page ID #398–401).

Critically, St. Jude presented evidence that, in the course of considering Kizer's request for an accommodation, it learned that Kizer could not perform her essential job functions remotely; in particular, in August and September 2021, Kizer's team was halfway through the two-year process of designing, building, and implementing a new electronic-health-record system known as Epic, and, as part of that process in the run up to the system's "go live" date, "it was anticipated that Ms. Kizer would shadow clinicians, nurses, research coordinators, clinical laboratory personnel, pharmacists and others involved in clinical research, often in yellow-zoned clinical areas, to better understand decision-making and workflow for the build of the new system." R. 31-19 (Hendricks Decl. ¶¶ 3, 7) (Page ID #413–14). Colette Hendricks, the leader of St. Jude's Epic-transition team and Kizer's ultimate supervisor, told the vaccine-accommodations team that, "[a]s the project got closer to 'go live,' [Kizer's] job would increasingly involve this 'at the elbow' support [and that] [a]fter 'go live' the person in Ms. Kizer's position would still be required to meet regularly in person with clinical research team members to trouble-shoot, refine and add new research protocols to the system." *Id.*; *see also* R. 31-5 (Bottenfield Decl. ¶ 41) (Page ID #183); R. 31-16 (Bottenfield Notes at 1) (Page ID #347); R. 31-18 (Bottenfield Dep. at 39:20–40:15, 51:10–20,

53:1–12) (Page ID #387–88, 394–95). This evidence indicates that, contrary to Kizer's suggestion, it would be less than a full year before her in-person duties kicked in. *See* Appellant Br. at 25–26. St. Jude thus presented evidence that in-person, "at the elbow" shadowing was an essential function of Kizer's job not easily "swapped" with another employee. *See* Reply Br. at 12–13. And because Kizer could not be safely on campus while unvaccinated, she could not be accommodated without undue hardship.

St. Jude's evidence also revealed that Kizer's other proposed accommodations would create a substantial burden in the overall context of its business, and thus an undue hardship. St. Jude submitted evidence that it maintained no 100% remote positions; even Kizer's out-of-state colleagues were required to come to campus on a regular basis. R. 31-5 (Bottenfield Decl. ¶ 46) (Page ID #184); R. 31-19 (Hendricks Decl. ¶ 3) (Page ID #413–14). Because transferring Kizer to an alternate position that could be performed 100% remotely would require St. Jude first to identify a new position for which Kizer was qualified and then to determine anew whether that position could be modified to accommodate her, such a transfer would not alleviate the undue hardship. R. 31-5 (Bottenfield Decl. ¶ 46) (Page ID #184). And St. Jude submitted evidence that it developed a thorough and systematic process for considering requests for accommodations, *see id.* ¶¶ 30–31, 33–35 (Page ID #180–81), that several dozen employees had requested religious accommodations, and that, unlike Kizer, the small number who were ultimately accommodated already occupied positions that could be modified to be 100% remote, *id.* ¶¶ 44–46 (Page ID #183–84). The district court thus correctly found that St. Jude's evidence demonstrated that it would be "a substantial burden in the overall context of St. Jude's business," to identify and modify new positions for religious objectors, "especially considering the number of people seeking

accommodation." R. 42 (Order at 34) (Page ID #717); *see Groff*, 600 U.S. at 468. As addressed below, Kizer submitted no evidence to the contrary that would sustain a jury verdict in her favor.

### 2. The Carter Declaration

In support of her argument that a dispute of material fact precludes summary judgment, Kizer relies primarily on a declaration wherein Carter, Kizer's former direct supervisor, asserts that "Kizer could have easily been accommodated by working at home and attending meetings remotely without any effort whatsoever on the part of Saint Jude." R. 32-3 (Carter Decl. ¶ 10) (Page ID #504). The district court correctly found that this declaration was conclusory and amounted to a collection of "unsupported contention[s]" that did "not create a question of fact." R. 42 (Order at 17) (Page ID #700) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006)).

Carter's declaration does not explain the factual basis for her assertions. Carter begins by declaring, "I know what all of [the ambulatory, beacon and research teams] did and I totally understand the way Epic was to be implemented." R. 32-3 (Carter Decl. ¶ 3) (Page ID #503). But Carter does not explain how she acquired this knowledge (except that she was "in charge" of those teams). *Id.* Nor does Carter explain what those teams actually did or precisely how Epic was to be implemented in order to support her contention that she "was the most knowledgeable to speak about [Kizer]'s job duties and responsibilities." *Id.* ¶ 6 (Page ID #503). Carter also does not explain the factual underpinnings for her assertions that "Kizer did not even need to be in the office. Her job could be done completely from home. She never went to contact end-users or patients at all," and that "she would not have ever worked anywhere near patients." *Id.* ¶¶ 9, 11 (Page ID #504). Carter made the further blanket assertion that "[w]hen the 'go live' would occur

a year after [Kizer] was fired, St Jude could not have known she would be at the elbow of clinical people. That was never going to happen." *Id.* ¶ 13 (Page ID #504).

Carter's declaration reads almost like an applied recitation of each legal argument that Kizer posed to the district court in her opposition to summary judgment. Kizer is correct that Carter's credibility and trustworthiness are not relevant at this stage. *See* Appellant Br. at 34. Instead, Carter must provide a factual basis to support her bare assertions that, based on her personal knowledge, Kizer could have been accommodated. Such a factual basis is required if a declaration or affidavit is to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and *show that the affiant or declarant is competent to testify on the matters stated*." (emphasis added)); *see also Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 499 (6th Cir. 2017) ("It is the burden of the party submitting the [declaration or] affidavit to show circumstances indicating the [affiant or declarant] has based the statement on personal knowledge." (quoting *Gaskey v. Fulton Bellows, LLC*, No. 3:05-cv-540, 2007 WL 869621, at *3 (E.D. Tenn. Mar. 20, 2007)); *Gill v. Fed. Kemper Life Assurance Co.*, No. 85-3670, 1986 WL 17518, at *4 (6th Cir. Aug. 1, 1986) ("To contravene the defendant's proof" and defeat summary judgment, "plaintiff's affidavit [or declaration] on proof must indicate on its face that the information it contains is given upon personal knowledge.").

Carter's declaration cannot support a jury finding that, contrary to St. Jude's extensive evidence, Kizer could have been accommodated without undue hardship. It is "merely conclusory, restating the requirements of the law . . . ." *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598–99 (6th Cir. 1999) (holding no dispute of material fact created by physician's conclusory

affirmation that ADA plaintiff met the legal requirements for disability); *see Quoc Viet v. Victor Le*, 951 F.3d 818, 823 (6th Cir. 2020) ("Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." (citations omitted)).

Kizer's deposition testimony contradicts her own arguments and parts of the Carter declaration. Kizer herself admitted in her deposition that at the Epic system's "go live," she would expect all personnel to be on campus, R. 31-2 (Kizer Dep. Excerpt at 139:9–14) (Page ID #149), though her counsel now argues the opposite, Appellant Br. at 33–34 (". . . it was never anticipated that Ms. Kizer would have worked 'at the elbow' at 'go live' because it did not make sense for her to" (citing R. 32-3 (Carter Decl. ¶ 12) (Page ID #504))). Kizer also admitted that, although some of her coworkers worked remotely some of the time, they were required to and did come to campus regularly. R. 33-3 (Kizer Dep. Excerpt at 129:1–131:10) (Page ID #555–57). And Kizer testified that as part of the Epic team she did in fact work on campus. *Id.* at 32:23–25 (Page ID #553).

When faced with St. Jude's evidence that the presence of unvaccinated staff on campus was a safety risk for St. Jude's vulnerable juvenile patients, that Kizer's job could not be performed remotely, that transferring Kizer to a position that could be performed remotely would require St. Jude first to identify and then to modify a position, and that Kizer's in-person duties were essential to her position, Carter's bare declaration would not allow a reasonable jury to rule in Kizer's favor. The declaration contains no facts supporting Carter's assertion that Kizer could do her job remotely, whether temporarily or permanently, or that certain tasks could be allocated to other employees. And the declaration contains no facts showing that another remote position existed into which Kizer could be transferred, with or without further accommodation. The declaration

16

contains only unsupported conclusions and does not "present[] specific evidence allowing a rational jury to conclude that" St. Jude violated Title VII.  *See Quoc Viet*, 951 F.3d at 823.  Nor does Kizer rely on any further factual evidence that would support a jury verdict in her favor.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of St. Jude's motion for summary judgment.